UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-712-H

DENITA WRIGHT, et al.                                                                    PLAINTIFFS

V.

LOUISVILLE METRO COUNCIL                                                          DEFENDANT

**MEMORANDUM OPINION AND ORDER**

A group of *pro se* plaintiffs have challenged the validity of the Louisville Metro Council's (the "Metro Council") adoption of an ordinance on October 27, 2011, which set new boundaries for Metro Council districts (the "2011 Redistricting Ordinance"). After reviewing the lawsuit, the Metro Council has moved for summary judgment on the grounds that it comply with all federal and state statutory and constitutional requirements while enacting the 2011 Redistricting Ordinance. Plaintiffs have not filed a response supporting their claims.

The Court has reviewed the record and the arguments upon which Metro Council relies. The Court agrees with the reasoning in the Metro Council's brief and concludes that the 2011 Redistricting Ordinance complies with all applicable constitutional and statutory provisions. Therefore, Plaintiffs challenge fails.

I.

Kentucky statutes require the Metro Council to redistrict the council districts every 10 years. KRS 67C.103(3); KRS 67C.135(5). This work is done after the U.S. Census is completed to bring about compliance with the one person-one vote principle. KRS 67C.135(5).

In May 2011, the Metro Council established an Ad Hoc Committee on Redistricting (the "Redistricting Committee"). Rick Blackwell (D-District 12) was named chair and Ken Fleming

(R-District 7) served as vice chair. The Redistricting Committee met seven times, all of which were open to the public. The Redistricting Committee also conducted six regional meetings throughout Louisville Metro. The regional meetings were conducted by individual Metro Council members or a number of Metro Council members together to provide information about particular districts and gather public comment and input.

The Redistricting Committee and the full Metro Council received plenty of help. The minutes of the Redistricting Committee set out some of the legal advice and other information provided to that body. The minutes also reflect actions and deliberations by the committee. The following six goals were set for the redistricting process in Louisville Metro:

1. Minority representation on the Council now stands at 6 members. The new districts should respect minority representation, neighborhoods, and communities of interest, and continue proportional representation of minority members. Ultimately at least 6 minority districts should be drawn.
2. Incumbent council members should not be placed in the same council district.
3. Ultimately this is a political process but the politics should be minimal. Neither party should look to pick up seats in the process.
4. The redistricting process should be minimally invasive. There should be as little change to districts as possible.
5. We should strive, when possible, to keep neighborhoods, suburban cities and other communities of interest connected.
6. Taxpayers should expect the committee to limit costs by using internal sources as much as possible, and make every effort to avoid actions that could increase the possibility of a legal action pursuant to either the Voting Rights Act, *Shaw v. Reno*, or violation of KRS 67C.103 and KRS 67C.135.

In addition to the legal requirements of redistricting, these criteria guided the Metro Council's work.

The 2010 U.S. Census showed that the population of Jefferson County (also known as Louisville Metro) was 741,096. Thus, the ideal population number for each district would be 28,504. The greatest population growth in Jefferson County took place in eastern Metro Council

districts; the greatest concentrated loss in population took place in northwestern Metro Council districts. The central task then was to redraw district lines so that each district's population would be as nearly equal as reasonably possible to 28,504.  During the map-drawing process, about 15 revisions were considered.  On October 27, 2011, the Metro Council voted 25 to 0 to adopt the 2011 Redistricting Ordinance.

On November 28, 2011, seven *pro se* individuals filed this lawsuit challenging the 2011 Redistricting Ordinance.  Reading the Plaintiffs' complaint liberally, it sets out one federal claim and six state law claims.  Those claims include: (1) Violation of Section 2 of the Voting Rights Act, 42 U.S.C. §1973, by diluting the voting power of African-Americans in west Louisville Metro; (2) Violation of KRS 67C.135 (8) by precincts being split in the redistricting process; (3) Violation of KRS 67C.103 (3) by the districts not being contiguous; (4) Violation of KRS 67C.103 (3) by neighborhood and community boundaries being crossed; (5) Violation of KRS 67C.135 (2) and (5) by the Metro Council performing the redistricting work instead of an "independent commission" doing this work; (6) Violation of a "conflicts of interest" standard and "political motivation" by incumbents being protected and maintained in their own districts; and (7) Violation of a "conflicts of interest" standard and "political motivation" by inadequate public input and inadequate public hearings being facilitated by the Metro Council.

II.

Section 2 of the Voting Rights Act prohibits any "standard, practice, or procedure … which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color …." 42 U.S.C. § 1973(a).  A violation is established where, "based on the totality of circumstances, it is shown that [citizens on the basis of race or color] have less

opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." *Id.* at § 1973(b). Plaintiffs have the burden of proof to establish a redistricting plan invalid under the Voting Rights Act. *Voinovich v. Quilter*, 507 U.S. 146, 155-156 (1993).

Here, the Plaintiffs' Voting Rights Act claim is based upon vote dilution. This is a typical Voting Rights Act claim. *See id* at 153. As a threshold matter, those asserting a Voting Rights Act violation must make a three part showing:

1. The minority group is sufficiently large and geographically compact to form a majority in the district.

2. The minority group is politically cohesive in its voting.

3. The majority group votes sufficiently as a bloc to enable it to usually defeat the minority preferred candidate. *Thornburg v. Gingles*, 478 U.S. 30, 50-51 (1986).

These three requirements are commonly referred to as the *Gingles* preconditions. Plaintiffs must show all three before a Voting Rights Act claim can proceed. *Voinovich, supra,* 507 U.S. at 157. Here, Plaintiffs cannot meet the first of the *Gingles* preconditions.

In *Johnson v. DeGrandy*, 512 U.S. 997, 1008 (1994), the Supreme Court said that, "[W]hen applied to a claim that single-member districts dilute minority votes, the first *Gingles* condition requires the possibility of creating more than the existing number of reasonably compact districts with a sufficiently large minority population to elect candidates of its choice." *See also Sanchez v. State of Colorado*, 97 F.3d 1303, 1314 (10th Cir. 1996). Plaintiffs do not allege that an additional or *seventh* majority African-American district can be created in Louisville Metro. The 2011 Redistricting Ordinance created six majority black districts. Plaintiffs have not shown that another African-American population concentration or center exist

that is sufficiently large and geographically compact to form another majority black district. This alone is fatal to Plaintiffs' vote dilution claim under the Voting Rights Act.

### III.

Even if Plaintiffs could meet the *Gingles* preconditions, they must also meet the "totality of the circumstances" requirement set forth in *Johnson v. DeGrandy, supra*. The Court finds no basis on which Plaintiffs can do so.

In *Johnson v. DeGrandy, supra,* the Supreme Court established that a showing of the three *Gingles* conditions, while required, was not sufficient to prove a Voting Rights Act claim:

> But if *Gingles* so clearly identified the three as generally necessary to prove a § 2 claim, it just as clearly declined to hold them sufficient in combination, either in the sense that a court's examination of relevant circumstances was complete once the three factors were found to exist, or in the sense that the three in combination necessarily and in all circumstances demonstrated dilution.

512 U.S. at 1011. "[C]ourts must also examine other evidence in the totality of circumstances, including the extent of the opportunities minority voters enjoy to participate in the political processes." *Id.* at 1011-1012.

The typical Voting Rights Act claim and the claim asserted by Plaintiffs here is that the 2011 Redistricting Ordinance has diluted African-American voting power. Plaintiffs cannot show minority vote dilution because the opposite is true. Looking to the totality of circumstances in Louisville Metro, the evidence is that African-American voting power is actually increased under the 2011 Redistricting Ordinance.

First, applying 2010 U.S. Census data to the prior redistricting plan (established in 2001), the Metro Council had five districts with African-American majorities. The black majorities in these districts ranged in size from 50.1% (District 2) to 71% (District 1). Under the 2011

Redistricting Ordinance, Metro Council *increased* the number of black majority districts from five to six. Thus, there is likely an enhancement, not a diminution, of voting strength for African-American voters.

It is true that African-American majorities in some districts have decreased. This was necessary in order to preserve six seats on the Metro Council in which black voters could elect their candidates of choice. *Clark v. Calhoun County,* 21 F.3d 92 (5th Cir. 1994) recognized the need for such actions in plain terms: "Whenever a majority-black district is created to remedy a § 2 violation, the number of black voters in the other districts must necessarily be reduced. Indeed, without this phenomenon, no majority-black districts would ever be created." *Id.* at 95.

Finally, a showing of proportionality is a strong indicator that, under the totality of the circumstances analysis, Section 2 of the Voting Rights Act is not violated. In Louisville Metro (all of Jefferson County), the 2010 U.S. Census shows a total African American population of 20.8%. African-Americans comprise only 19% of the voting age population (those 18 and over). Under the 2011 map, African-American voters could elect their candidates of choice in 6 of 26 districts on the Metro Council. This means black voters will have the ability to effectively control 23% of the Metro Council districts. By having an ability to elect 23% of the seats on the Metro Council under the 2011 Redistricting Ordinance, African-American voters will have greater representation on the Metro Council (23%) than their proportionate share of the county's total population (20.8%) and voting age population (19%).

In *Johnson v. DeGrandy, supra,* the Court held that, under the facts there, Section 2 of the Voting Rights Act was not violated where minority voters formed effective voting majorities in a number of districts generally proportional to minority voters' share in the total voting age

population. 512 U.S. at 1000. While proportionality is not completely dispositive of a Section 2 claim, it is an important fact in the totality of circumstances analysis.  In all these circumstances, the Court cannot see that Plaintiffs can show a violation of the Voting Rights Act.

IV.

Plaintiffs make a number of claims under state law to invalidate the 2011 Redistricting Ordinance.  However, for the reasons that follow, none of those claims can succeed.

A.

Citing KRS 67C.135 (8) Plaintiffs argue that the 2011 Redistricting Ordinance unlawfully cut through existing precincts. Kentucky law places the responsibility and authority for drawing Jefferson County precinct lines with the Jefferson County Board of Elections. *See* KRS 117.055(1); KRS 117.0552(2).  Opinions of the Kentucky Attorney General have noted consistently that legislative bodies are empowered to draw district lines that cut across precinct lines.  Then, the county board of elections is to redraw precinct lines to conform to the new legislative district lines. *See* Kentucky OAG 82-621 ("[T]he county board of elections which has the sole authority to alter precinct lines must alter any precinct that has been crossed by virtue of reapportionment …."); Kentucky OAG 82-617 ("Following reapportionment the county board of elections must alter any precinct that has been crossed by virtue of reapportionment ….").

In March of 2012, the Jefferson County Board of Elections drew new precinct lines for Jefferson County. These new lines conform to the 2011 Redistricting Ordinance so that no precinct is in more than one Metro Council district. As a result of this work by the Jefferson County Board of Elections, no precinct is in more than one district and KRS 67C.135 (8) is not violated.

**B.**

Both KRS 67C.103 (3) and KRS 67C.135 (4) require that each council district shall be contiguous.  Plaintiffs do not allege the 26 Metro Council districts are non-contiguous. Indeed, the maps adopted as part of the 2011 Redistricting Ordinance show that each of the 26 council districts is contiguous.  Throughout their complaint, however, Plaintiffs allege that neighborhoods and communities are divided and not contiguous.  In making these allegations, Plaintiffs mistakenly mix the contiguous *district* requirement with the statutory preference that council districts "shall respect existing neighborhood, community, and city boundaries whenever possible." KRS 67C.103 (3).

KRS 67C.103(3) states that "every council district shall be compact and contiguous and shall respect existing neighborhood, community, and city boundaries *whenever possible*."  If the Kentucky General Assembly wanted to *require* that neighborhood, community, and city boundaries never be crossed, it could have used more definitive terms.  It would have stated these neighborhood boundaries "shall not be crossed." In reading Kentucky statutes, courts are to construe all words and phrases according to their common and approved usage of language. *See* KRS 446.080(4).

While the General Assembly has directed that neighborhood and community boundaries be respected whenever possible, KRS 67C.103(3), it did not, in this Court's view, require that neighborhood and community boundaries shall be contiguous.

C.

KRS 67C.103(3) directs that neighborhood, community and city boundaries be respected "whenever possible." As previously noted, the use of "whenever possible" must not be read the same as "shall." The phrase "whenever possible" must be given its common and approved usage, KRS 446.080(4), and that provided discretion and flexibility to the Metro Council as it was drawing district boundaries.

The Louisville Metro Council had legislative discretion in drawing the district boundary lines. As noted by the U.S. Supreme Court, redistricting is difficult for legislative bodies and they "must have discretion to exercise the political judgment necessary to balance competing interests." *Miller v. Johnson, supra,* 515 U.S. at 915.   Councilman Rick Blackwell served as chair of the Redistricting Committee. In his affidavit, Mr. Blackwell notes the particular challenges the Metro Council faced in drawing the majority African-American districts:

- As in all of the districts, the Metro Council had to distribute the population within the requirements of the one person, one vote rule. This required that these districts (and all of the districts) have an overall deviation of 10% or less from the ideal district population of 28,504.

- The majority African-American districts were those that had lost the most population and required substantial additions.

- Of the six majority African-American districts, three (Districts 1, 4, 5) have substantial borders on the Ohio River and, thus, much less flexibility in drawing boundaries.

- The Metro Council was committed to proportional representation of black citizens and drawing six districts with effective African-American majorities.

- The districts had to be compact and contiguous.

- Incumbent Metro Council members were not to be placed in the same district.

All of these factors taken together required the Metro Council to cut across some neighborhood boundary lines.

Plaintiffs make various references to districts being drawn in different ways and districts that should "cascade" more east and south. Irrespective of these desires, this Court's review is limited. In considering a challenge to legislative redistricting, a court must consider whether or not a law was violated. A district need not "defeat rival compact districts designed by plaintiffs' experts in endless 'beauty contests.'" *Bush v. Vera*, 517 U.S. 952, 977 (1996).

D.

In their complaint, Plaintiffs repeatedly call for an "independent commission" to redistrict the Metro Council districts instead of the Metro Council itself performing this task. However, the two key statutes, KRS 67C.103 and KRS 67C.135, say not one word about independent commissions. Plaintiffs' claims related to an independent commission must fail.

Plaintiffs allege the Metro Council violated a "conflicts of interest" standard and engaged in "political motivation" when it chose to place incumbents in separate districts and not pit incumbents against one another. Plaintiffs do not identify any law as the basis of their conflicts of interest standard. Moreover, there is no legal violation in protecting incumbents. *See Vieth v. Jubelirer*, 541 U.S. 267, 286 (2004) ("[P]artisan districting is a lawful and common practice …."). This part of Plaintiffs' complaint must fail as well.

Finally, Plaintiffs allege the Louisville Metro Council failed to have enough public hearings and failed to solicit enough public input in the redistricting process. The actual facts dispute this charge. The Metro Council had extensive public hearings and opportunity for comment. The public also had the opportunity to address the entire Metro Council at the October

27, 2011 meeting where the 2011 Redistricting Ordinance was adopted. In addition, the Metro Council sponsored six regional meetings throughout Metro Louisville. Finally, the Metro Council website invited written comments to be sent via email or U.S. Mail to the Metro Council Clerk.

In light of these factors, the Plaintiffs' claims in this realm fail.

V.

The U.S. Supreme Court has repeatedly held redistricting "is a legislative task which the federal courts should make every effort not to preempt." *Wise v. Lipscomb*, 437 U.S. 535, 539-540 (1978)(citations omitted). "Federal-court review of districting legislation represents a serious intrusion on the most vital of local functions." *Miller v. Johnson*, 515 U.S. 900, 915 (1995)(citations omitted). Redistricting is difficult for legislative bodies and they "must have discretion to exercise the political judgment necessary to balance competing interests." *Id*. Until a plaintiff makes a sufficient showing otherwise, the good faith of the legislative body must be presumed. *Id*. "These principles inform the plaintiff's burden of proof.

Courts must also recognize these principles, and the intrusive potential of judicial intervention into the legislative realm, when assessing under the Federal Rules of Civil Procedure the adequacy of a plaintiff's showing at the various stages of litigation and determining whether to permit discovery or trial to proceed." *Id*. at 916-917 (citing Fed. Rules Civ. Proc. 12(b), 12(e), 26(b), and 56; and *Celotex Corp. v. Catrett*, *supra*)). Even this early stage of the litigation, it is clear that the Metro Council proceeded in good faith to meet its legitimate redistricting objectives and did not violate minority voting rights in doing so.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the Metro Council's motion for summary judgment is SUSTAINED and Plaintiffs' complaint is DISMISSED WITH PREJUDICE.

This is a final order.

cc: Counsel of Record